UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION H-14-171S-3 |
| | § | |
| | § | |
| ARETHA JOHNSON | § | |

## Order

Pending before the court are the following five motions filed by defendant Aretha Johnson[1]: (1) a motion for disclosure of *Brady/Giglio* information and motion for early production of Jencks material (Dkt. 279); (2) a motion for pretrial production of evidence admissible to attack the credibility of co-conspirator declarants not to be called as witnesses (Dkt. 280);(3) a motion in limine to preclude admission of co-conspirator hearsay statements (Dkt. 281); (4) a motion for severance (Dkt. 282); and (5) a motion for disclosure pursuant to Federal Rule of Evidence 404(b) (Dkt. 283). Having considered the motions, responses, and applicable law, the court is of the opinion that the motions at docket entries 280 and 283 should be GRANTED AS UNOPPOSED; the motion at docket entry 279 should be GRANTED IN PART AND DENIED IN PART; the motion at docket entry 282 should be DENIED; and the court should defer on ruling on the motion in limine at docket entry 281 until the pretrial conference.

---

[1] The court notes that two of the defendants in this case have the last name "Johnson" (Aretha Johnson and Earnestine Johnson). This motion relates only to Aretha Johnson; when the court uses the name "Johnson" in this order, it refers solely to Aretha Johnson.

# I. THE SUPERSEDING INDICTMENT

The superseding indictment first details how the Medicare program works and notes that Medicare Part B covers partial hospitalization programs ("PHPs") connected with the treatment of mental illness. Dkt. 136 ¶¶ 1-15. It then alleges that Continuum Healthcare, LLC owned three different community mental health centers in the Greater Houston Area that billed for PHP services that were not medically necessary and, in some cases, not provided. *Id.* ¶¶ 16–19. Similarly, it alleges that Westbury Community Hospital billed for PHP services that were not medically necessary and, in some cases, not provided. *Id.* ¶ 20. Defendants David Edson and Jeffery Parsons allegedly formed My Fellow Man Alliance ("MFMA") as a tax-exempt corporation to take over the Continuum "bed lease program." *Id.* ¶ 21.

According to the superseding indictment, Johnson was the owner/operator of Liberty Island Adult Day Care (Liberty Island). *Id.* ¶ 24. The superseding indictment alleges that Johnson and others conspired to (1) defraud the United States by, among other things, obstructing the Government in its administration of the Medicare program; (2) violate Title 42, U.S.C. § 1320a-7b(b)(1) by soliciting and receiving kickbacks and bribes; and (3) violated Title 42, U.S.C. § 1320a-7b(b)(2) by offering and paying kickbacks and bribes. *Id.* ¶ 34. The superseding indictment asserts that Edson and Parsons caused Continuum to issue checks to patient advocates and personal care homeowners for referrals of Medicare beneficiaries to Continuum's or Westbury's PHP program and caused Continuum or MFMA to issue checks to personal care home owners for bed leases in exchange for the referral of Medicare beneficiaries by those personal care home owners. *Id.* ¶¶ 36–39. It alleges, specifically, that Johnson received approximately $2.6 million from Continuum or Westbury in exchange for referring her clients to PHP services at Continuum or Westbury. *Id.* ¶ 40. It then

alleges that Edson and Parsons caused Continuum and Westbury to bill Medicare approximately $12.2 million for PHP services allegedly needed by, and provided to, the clients referred by Johnson and that Edson and Parsons caused Medicare to pay approximately $4.7 million to Continuum and Westbury for PHP services allegedly needed by, and provided to, clients referred by Johnson. *Id.* ¶¶ 41–42.

Paragraph 74(a) of the indictment contains the overt act alleged by Johnson in furtherance of the alleged conspiracy; it states that on May 18, 2009, Edson and Parsons caused payment of approximately $12,400.00 to Johnson in exchange for the referrals. *Id.* ¶ 74(a). Count 2 names Johnson in connection with the contention that the defendants aided and abetted each other in paying kickbacks and bribes in exchange for referrals and includes the $12,400.00 payment to Johnson on May 18, 2009. *Id.* at 22-23. Counts 12 through 13 allege that Edson, Parsons, and Johnson engaged in monetary transactions by, through, or to a financial institution involving criminally derived property of a value greater than $10,000 and that, specifically, they deposited two checks ($11,106 and $12,000) from Continuum to Johnson DBA Liberty Island Properties into the Liberty Island Adult Day Care account at JP Morgan Chase Bank.

## II. MOTION FOR PRETRIAL PRODUCTION OF EVIDENCE AND MOTION FOR DISCLOSURE OF *BRADY/GIGLIO* AND JENCKS ACT MATERIALS

Johnson requests that the court require the Government to timely produce all *Brady/Giglio* materials and to produce all Jencks Act material "thirty days before the suppression hearings." Dkt. 279. This request includes specific requests for certain types of exculpatory evidence and information about the Government's use of informants, operatives, or cooperating individuals. *Id.* Johnson additionally requests an order requiring the Government to produce all evidence that would

3

be admissible to attack the credibility of non-testifying co-conspirator declarants. Dkt. 280. The Government states that it will produce all *Brady/Giglio* materials, including impeachment evidence, as the evidence is obtained. Dkt. 309. The Government contends that no confidential witnesses or informants were used but that it will make available any promises, inducements, or plea agreements it makes with any witnesses it intends to call, as well as the criminal records of those witnesses. *Id.* The Government also notes that it will provide all *Giglio* material related to co-conspirator statements that are admitted at trial. *Id.* As far as early disclosure of Jencks Act material, the Government declines to provide grand jury testimony of witnesses not required by the Jencks Act, notes that it is not required to provide transcripts required by the Jencks Act until the witness testifies, but nonetheless agrees to provide any Jencks Act material one week prior to the trial date. *Id.*

Since the Government has agreed to produce all *Brady/Giglio* materials as they become available and, specifically, all *Giglio* material related to all co-conspirator statements admitted at trial, Johnson's motion for pretrial production of evidence admissible to attack the credibility of co-conspirator declarants not to be called as witnesses (Dkt. 280) is GRANTED AS UNOPPOSED. Also all of the requests for *Brady* materials contained in the motion for disclosure of *Brady/Giglio* information (Dkt. 279) are GRANTED AS UNOPPOSED since the Government has agreed to produce all *Brady/Giglio* materials as they are obtained.

As far as the request for early disclosure of Jencks materials, Johnson argues that these materials should be furnished in sufficient time for the defendant to examine and use the material in a meaningful manner. Dkt. 279. She requests disclosure the materials 30 days before the "suppression hearing," arguing that this early disclosure will assist in achieving a fair trail and "also

serve the public interest in expediting the fair resolution of criminal cases." *Id.* She notes that counsel and investigators need the information "well before the jury is sworn" in order to investigate and provide effective assistance of counsel. *Id.*

First, there is currently no motion to suppress pending before the court, and no suppression hearing is scheduled. Second, Johnson has provided no reason why she needs materials not statutorily required until the witness testifies so early. The Government has agreed to provide the materials within seven days of trial, and the court finds that this is a reasonable amount of time for Johnson to review the materials prior to trial. Johnson's motion for early dislosure of Jencks materials (Dkt. 279) is therefore GRANTED IN PART AND DENIED IN PART. It is GRANTED AS UNOPPOSED insofar as Johnson requests *early* disclosure, as the Government has agreed to disclose the materials seven days before trial. It is DENIED to the extent Johnson requests that the materials be disclosed thirty days before a suppression hearing, as (1) there is no suppression hearing scheduled; and (2) advance disclosure of thirty days is unnecessary.

### III. MOTION IN LIMINE TO PRECLUDE ADMISSION OF CO-CONSPIRATOR HEARSAY STATEMENTS

Johnson moves for an order precluding admission at trial of any out-of-court statements purportedly made by any indicted or unindicted co-conspirators that directly or indirectly refer to her or otherwise incriminate her prior to the court determining by a preponderance of evidence that a conspiracy existed, that Johnson and the declarant were members of that conspiracy, and that the statement was made in furtherance of the conspiracy. Dkt. 281 (citing *United States v. Beckham*, 968 F.2d 47, 51–52 (D.C. Cir. 1992)). Johnson concedes that co-conspirator declarations subject to connection are admissible, but notes that if the court allows the declarations without making the

5

determinations outlined above, the jury will have heard damaging statements about Johnson that a curative instruction cannot fix. *Id.*

Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if it is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Under *Bourjaily v. United States*, "when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Bourjaily*, 483 U.S. 171, 176, 107 S. Ct. 2775 (1987).

The Government notes that the court may carry a motion regarding co-conspirator statements at least through the presentation of the Government's case until a determination is made with regard to Rule 801(d)(2)(E) predicate facts. Dkt. 311. It therefore requests that the motion in limine be denied.

The court's general practice is to rule on motions in limine during the pretrial conference. It finds no reason to rule on this particular request sooner. Thus, the court DEFERS on ruling on the motion in limine until the pretrial conference.

### IV. MOTION FOR SEVERANCE

Johnson argues that the superseding indictment contains multiple theories of conspiracy and that the alleged schemes are separate and unrelated. Dkt. 282. Johnson claims that the schemes therefore lack the sameness or commonality required for joiner of the offenses under Rule 8 of the Federal Rules of Criminal Procedure. *Id.* She asserts that the charge against her, conspiracy to defraud the United States and the pay and receive kickbacks, has no commonality in law or fact with the other conspiracies. *Id.* Thus, to try Johnson along with all the other defendants would prejudice Johnson because the jury would hear evidence on totally unrelated charges and defendants , would

be confused about each defendant's actual role, and would have to decipher an extremely complex jury charge. *Id.* Johnson asserts that the case "presents an extreme and serious risk that the jury will be unable to make a reliable judgment about guilt, or innocence, despite any cautionary instructions." *Id.* (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

The Government argues that all twelve defendants are charged with one over-arching conspiracy to violate the anti-kickback law. Dkt. 310. It asserts that a spillover effect does not generally warrant severance and that severance is not required simply because co-defendants may present mutually antagonistic defenses. *Id.* The Government thus requests that the court balance any possible prejudice against the judicial economy of having a joint trial and consider less drastic means of lessening any potential prejudice such as limiting instructions. *Id.*

Under Rule 8(b) of the Federal Rules of Criminal Procedure, an indictment

> may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Rule 14(a) of the Federal Rules of Criminal Procedure covers relief from prejudicial joinder. Under Rule 14(a),

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). A defendant moving for severance, however, faces significant obstacles. *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012). "The federal judicial system evinces a preference for joint trials of defendants who are indicted together because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent

7

verdicts.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933 (1993) (internal quotation marks omitted)). "It is the rule, therefore, not the exception, that 'persons indicted together should be tried together, especially in conspiracy cases.'" *Id.* (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir.1993)). "Severance is proper 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Mitchell*, 484 F.3d 762, 775 (5th Cir. 2007) (quoting *Zafiro*, 506 U.S. at 539). That being said, the "mere presence of a spillover effect does not ordinarily warrant severance," and "[m]utually antagonistic defenses are not prejudicial *per se.*" *United States v. Sparks*, 2 F.3d 574, 583 (5th Cir. 1993) (spillover effect); *Zafiro*, 506 U.S. at 538 (mutually antagonistic defenses). Moreover, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702 (1987)).

"In deciding whether a string of actions by various individuals is a single conspiracy or multiple conspiracies, [courts] look to three factors: '(1) the existence of a common goal; (2) the nature of the scheme; and (3) overlapping of participants in the various dealings.'" *United States v. Allen*, 76 F.3d 1348, 1370 (5th Cir. 1996). "A single conspiracy exists where a 'key man' is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal." *United States v. Richerson*, 833 F.2d 1147, 1154 (5th Cir. 1987). Here, the superseding indictment alleges that all defendants were involved in a conspiracy to defraud the United States and to pay and receive kickbacks. Dkt. 136. Edson and Parsons allegedly caused Continuum/Westbury to issue checks to the other defendants in exchange for referral of Medicare beneficiaries by the other defendants. *Id.* Edson and Parsons are thus

8

alleged to be "key men" and the other defendants, including Johnson, are alleged to have exerted individual efforts toward the common goal of defrauding the government and paying and receiving kickbacks. The court thus finds that joinder of the offenses is proper. The court is confident the jury will be able to understand the roles of each individual defendant and will provide limiting instructions if needed. Johnson's motion for severance (Dkt. 282) is thus DENIED.

### V. MOTION FOR DISCLOSURE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b)

Johnson requests that the Government disclose any evidence it has concerning other crimes, wrongs, acts, or uncharged criminal conduct that it intends to offer in its case-in-chief pursuant to Federal Rule of Evidence 404(b). Dkt. 283. Johnson further requests that the Government advise her of its intent to introduce Rule 404(b) evidence outside of the presence of the jury prior to its offer so that she may make proper objections. *Id.* The Government states that it is aware of the requirements under Rule 404(b) and will provide notice to Johnson in advance of trial. Dkt. 308. Since the Government has agreed to provide this evidence in advance of trial, Johnson's motion (Dkt. 283) is GRANTED AS UNOPPOSED.

## VI. Conclusion

Johnson's motions at docket entries 280 and 283 are GRANTED AS UNOPPOSED. Johnson's motion at docket entry 279 is GRANTED IN PART AND DENIED IN PART. It is GRANTED AS UNOPPOSED to the extent it requests disclosure of *Brady/Giglio* information. It is also GRANTED AS UNOPPOSED insofar as Johnson requests *early* disclosure of Jencks Act materials, as the Government has agreed to disclose the materials seven days before trial. It is DENIED to the extent Johnson requests the Jencks Act materials be disclosed thirty days before a suppression hearing. The motion at docket entry 282 is DENIED. The court DEFERS on ruling on the motion in limine at docket entry 281 until the pretrial conference.

Signed at Houston, Texas on January 7, 2015.

_____
Gray H. Miller
United States District Judge